```
          UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Montriville Graham**

    v.                                Civil No. 07-cv-08-PB
                                            Opinion No. 2007 DNH 147

**Larry Blaisdell, Warden,**
**Northern New Hampshire**
**Correctional Facility**

## MEMORANDUM AND ORDER

Montriville Graham was convicted on June 24, 1997, of sexually assaulting his six-year-old step-daughter, DG. Graham made several unsuccessful efforts to challenge his conviction in state and federal court. He began this action on January 5, 2007 by filing a habeas corpus petition claiming ineffective assistance of counsel and prosecutorial misconduct. Graham's jailer, the Warden of the Northern New Hampshire Correctional Facility, argues in a motion for summary judgment that Graham's petition is barred by the one-year statute of limitation for federal habeas corpus petitions established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). For the reasons set forth below, I grant the Warden's motion.

## I. BACKGROUND

DG resided primarily with her father, Randolph Gregory, but visited the Graham home once or twice a week, sometimes for overnight visits. At times, Graham was alone with DG while his wife, JoAnn, was at work. In January 1997, when DG was five years old, she told her father that Graham had been sexually assaulting her. Gregory and JoAnn Graham reported the allegation to the Newport Police Department and an investigation ensued.

As part of the investigation, detectives executed a search warrant at Graham's home, finding a pair of black and orange underwear and a pornographic videotape. Dr. Steven Kairys, an expert in child sexual assault, examined DG and found that her hymen was unusual for a five-year-old although her condition was not necessarily indicative of penetration.

In February 1997, JoAnn Graham agreed to wear a body wire to confront Graham about the allegations. While Graham did not admit to the abuse in the taped conversation, he did not deny it and made statements that could be characterized as implied admissions. For example, Graham stated: "There's something in me that has something to do with some sort of monster, I intend

to, to get rid of it." Transcript of Taped Recorded Conversation ("Transcript") at 11. "If, if, if, of what my worst fears are about, okay. She was not raped, she was not forced, okay. It wasn't like we . . . if there were anything wrong with her, she did that herself. You know. Most children do." Transcript at 13 (ellipses appear in the original). "You don't wake up in the morning to look in the mirror and wonder what you're looking at, okay. You don't know what that's like." Transcript at 14. During the conversation, Graham repeatedly encouraged JoAnn to avoid cooperation with the police.

On April 3, 1997, Graham was indicted on two counts of aggravated felonious sexual assault. One count alleged a pattern of sexual assault by sexual contact with DG, and the other alleged a pattern of sexual assault by sexual intercourse with DG. See N.H. Rev. Stat. Ann. §§ 632-A:1; 632-A:2.

At trial, DG testified that Graham had engaged in sexual intercourse with her and that she had touched his penis on more than one occasion. Trial Transcript at 21-23 (hereinafter "Tr."). She identified an orange and black pair of underwear and testified that she saw Graham wearing them without his pants.

She also identified an X-rated adult movie that she testified to having watched with Graham.  Tr. at 24-25.  On cross-examination, defense counsel questioned DG about other movies she had seen and whether she had ever confused movies or television with reality.  Tr. at 26-33.  DG also testified on cross-examination that she had watched an X-rated adult movie with her friend, TS.  Tr. at 33-35.

Gregory, Dr. Kairys, and a Newport Police Department detective also testified for the state.  As part of the detective's testimony, the jury heard the recording of the body wire conversation and received a transcript of the conversation.

Graham took the witness stand and denied that he had ever sexually assaulted DG.  He cited instances in which DG had imitated behavior depicted on television shows (i.e., pretending to have babies after watching a show about childbirth on the Discovery Channel) and stated that she had formed false beliefs about the world on the basis of television shows and movies (i.e., concluding that her toys could walk and talk after watching the movie *Toy Story* and that dinosaurs were real after watching the movie *The Land Before Time*).  He testified that he

had twice caught DG watching X-rated adult movies with one of her friends.  He explained that DG often saw him in his underwear because he slept in his underwear and she routinely came into his room while he was sleeping.  Finally, he explained his failure to deny the sexual assault to his wife during their recorded conversation because, "I knew she couldn't handle the idea of pitting me against her daughter."  Tr. at 81.

After a two-day jury trial, Graham was found guilty of engaging in a pattern of sexual assault by sexual contact, but he was acquitted of sexual intercourse charge.  The New Hampshire Supreme Court affirmed his conviction on January 20, 1999. Graham first petitioned for federal habeas relief on October 31, 2002, but his petition was dismissed without prejudice on January 13, 2003.  Graham filed his first state habeas petition on January 23, 2003.  The Coos County Superior Court denied Graham's petition on April 14, 2003.  Graham appealed to the New Hampshire Supreme Court, which denied his appeal on July 24, 2003.  Graham filed his second state habeas petition on or about February 28, 2005.  The Coos County Superior Court denied the petition on September 8, 2005.  Graham filed a motion for reconsideration on

September 26, 2005, but the motion was denied on October 14, 2005.  Graham appealed this decision, and his appeal was denied on December 13, 2005.  Graham filed a motion for reconsideration on December 20, 2005, but this motion was denied on January 13, 2006.

Graham filed his present petition in this court on January 5, 2007.  He claims that: (1) trial counsel was ineffective when he failed to contact JoAnn Graham and Wanda Belloir and misled Graham about his failure to contact them; and (2) the prosecutor engaged in misconduct when she alleged that Graham had engaged in sexual intercourse with DG, argued at trial that JoAnn Graham believed DG's story, and suppressed JoAnn's exculpatory testimony by threats and the issuance of a misdated subpoena.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the

absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  **ANALYSIS**

The warden argues that he is entitled to summary judgment because Graham's petition is barred by AEDPA's one-year statute of limitation.  Graham argues in the alternative that: (1) his petition is not time-barred because he filed it within a year after discovering the factual basis for his claims; (2) the statute of limitation period should be tolled because of his attorney's negligence; and (3) the statute should be disregarded because he is actually innocent.  I reject all three of Graham's arguments.

**A.   AEDPA Statute of Limitation**

AEDPA provides that a one-year period of limitation shall

apply to a petition for writ of habeas corpus brought by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  AEDPA specifies that:

> [t]he limitation period shall run from the latest of –
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

29 U.S.C. § 2244(d)(1).

Notably, the time during which a properly filed application for post-conviction relief or collateral review is pending in state court does not count toward the period of limitation.  28 U.S.C. § 2244(d)(2).

Graham argues that his petition is not time-barred because he filed it within one year of the date on which the factual predicate for his claims could have been discovered through the exercise of due diligence, pursuant to 28 U.S.C. § 2244(d)(1)(D). Graham's petition is based on what he claims is new information described in affidavits from JoAnn Graham and Wanda Belloir.[1] In his second state court habeas proceedings, Graham stated that he

---

[1] JoAnn Graham's affidavit consists largely of her own conclusions and facts already known to the defendant and developed at trial. She states that DG was confusing the pornographic movies she had watched with her friend with reality when DG made the allegations, that Graham was not alone with DG often enough to have had the opportunity for a pattern of assault, and that she knew Graham had exonerated himself after the body wire conversation. JoAnn's affidavit also alleges prosecutorial misconduct. She states that the prosecution misrepresented facts at the trial, threatened her with a perjury charge, wrongfully excluded her from testifying at trial, and presented irrelevant evidence (the underwear and the X-rated adult video).

Similarly, Wanda Belloir's affidavit consists mainly of her own conclusions, hearsay, and facts already known to the defendant and developed at trial. She states that she was never called as a witness, that her daughter TS played with DG, and that TS and DG watched a pornographic video together. Belloir reported that DG had told TS that Graham made DG suck his penis and that the pornographic video had black men in it. Finally, she states that she had seen DG trying to separate Gregory and his girlfriend by creating problems between them and that DG made the allegations against Graham with the intent of separating her mother and Graham.

received JoAnn Graham's affidavit in August 2003 and Belloir's affidavit in August 2004.

Assuming for purposes of analysis that Graham discovered the factual predicate for his current claims when he obtained the second affidavit, the AEDPA limitation period began to run no later than August 2004. Graham waited six months after he obtained the second affidavit before he filed his second state habeas petition on February 28, 2005. The AEDPA limitation period was then tolled from February 28, 2005, until the court disposed of the petition by denying his final motion for reconsideration on January 13, 2006. Thereafter, the limitation period began to run again and expired in July 2006.

Graham did not file his petition in this court until January 5, 2007, well after the expiration of the statute of limitation. Therefore, unless the statute was equitably tolled, or may be disregarded because Graham was actually innocent, his petition is untimely and must be dismissed.

**B.   Equitable Tolling**

AEDPA's one-year limitation period may be equitably tolled

upon a showing of exceptional circumstances.[2]  <u>Neverson v. Farquharson</u>, 366 F.3d 32, 41 (1st Cir. 2004).  The party seeking equitable tolling "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005).  The First Circuit recently created a list of five factors to assist in determining whether equitable tolling is appropriate in a habeas case:

> 1) The petitioner's own diligence in pursuing habeas relief,
> 2) Whether some extraordinary circumstance prevented the petitioner from making a timely filing,
> 3) The petitioner's diligence in pursuit of other post-conviction remedies and the process already afforded in the state system,
> 4) Any prejudice to the prosecution that would result from tolling and possible retrial,
> 5) The fact that equitable tolling is not available in cases of dubious merit, and
> 6) Whether or not the case is a capital case and whether or not the petitioner has been sentenced to death.

---

[2] The Supreme Court has not held explicitly that § 2244(d) allows for equitable tolling, although the Court has applied an equitable tolling analysis to § 2244(d) claims in cases where the parties agree that equitable tolling is available.  <u>See</u> <u>Lawrence v. Florida</u>, 127 S.Ct. 1079, 1085 (2007).  In 2004, however, the First Circuit held that AEDPA's limitation period in § 2244(d) is subject to equitable tolling in certain cases.  <u>Neverson</u>, 366 F.3d at 41.  In the absence of a decision by the Supreme Court, I am bound to apply the law of the First Circuit.

Trapp v. Spencer, 479 F.3d 53, 61 (1st Cir. 2007) (internal citations omitted).  Equitable tolling is appropriate only when circumstances out of the litigant's control have prevented the litigant from filing promptly.  See, e.g., Neverson, 366 F.3d at 42; Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002).

 Equitable tolling is not appropriate in this case because Graham has failed to show that he diligently pursued his rights. Graham blames his inaction on his attorney's negligence. However, the First Circuit has recognized that attorney negligence is not ordinarily grounds for equitable tolling. Trapp, 479 F.3d at 60.  In any event, even if Graham were able to blame his attorney for his failure to obtain JoAnn Graham's and Belloir's affidavits earlier, Graham has failed to offer any explanation for the six-month delay between August 2004, when he obtained the second affidavit, and February 2005, when he filed his second state court habeas petition.  Nor has he explained why he delayed his current federal habeas corpus petition by almost another year after the state court rejected his second habeas petition.  These unexplained delays preclude Graham from claiming the benefit of equitable tolling.

Addressing the other Trapp factors, I note first that there are no extraordinary circumstances present here. Additionally, Graham did not demonstrate diligence in applying for other post-conviction remedies. This is not a capital or death penalty case. The petition is also of dubious merit because, even in light of JoAnn Graham and Belloir's affidavits, ample evidence was produced at trial to convict Graham. Finally, the prosecution would be significantly prejudiced if I allowed Graham to invoke equitable tolling because more than ten years have passed since the original trial. The prosecution's primary witness, DG, was only six years old at the time of trial and was only four and five years old when she was victimized. The need for finality is particularly strong when dealing with a young victim of sexual assault because of the difficulty and trauma involved in revisiting the past.

For reasons stated above, equitable tolling of the AEDPA limitation period is not appropriate in this case.

**C.   Actual Innocence**

Graham also raises a claim of actual innocence. There is no statutory exception to the AEDPA statute of limitation for actual

innocence, although Congress "clearly knew how to provide such an escape hatch." See David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003) (noting that AEDPA §2244(b)(2)(B)(ii) is an example of Congress providing extra protection for claims of actual innocence). The Supreme Court has not spoken on this issue, but the First Circuit has noted that while there is favorable dicta in a few cases to suggest that actual innocence should "override" AEDPA's one-year limitation, "to us these dicta are in tension with the statute and are not persuasive." See id.

Even assuming, arguendo, that a properly supported claim of actual innocence could exempt an untimely habeas petition from AEDPA's one-year limitation period, Graham's claim fails because he cannot demonstrate actual innocence. In Schlup v. Delo, 513 U.S. 298, 324 (1995), the Supreme Court noted in a somewhat different context that a petitioner claiming actual innocence must support his allegation with new, reliable evidence that was not presented at trial. Schlup, 513 U.S. at 324. Further, to make the required showing, "petitioner must show that it is more likely than not that no reasonable juror would have convicted him

in the light of the new evidence." Id. at 327.[3]

The "newly discovered evidence" in this case does not come close to establishing an actual innocence claim. As noted in Herrera v. Collins, 506 U.S. 390, 417 (1993), motions for new trial based solely on affidavits are disfavored because of the potential for abuse, and the Herrera court noted that the likelihood of abuse is "as great-or-greater" in the habeas "actual innocence" context. Herrera, 506 U.S. at 417. Just as in Herrera, the affidavits in this case are largely based on hearsay and contain inconsistencies. See id. at 417-18. As the Court in that case stated:

---

[3] AEDPA changes the Schlup "more likely than not" standard of proof to the more stringent "clear and convincing" standard at least in the context where a petitioner seeks to justify a second or successive petition based on a claim of actual innocence. See 28 U.S.C. § 2244(b)(2)(B)(ii). It is unclear which standard of proof should apply in a case such as this one where a habeas petitioner seeks to justify failure to comply with the AEDPA statute of limitations based on an actual innocence claim. See Limin Zheng, Comment, Actual Innocence as Gateway Through the Statute-of-Limitations Bar on the Filing of Federal Habeas Corpus Petitions, 90 Calif. L. Rev. 2101, 2139-41 (2002) (discussing the silence of AEDPA and the Supreme Court on this issue). The distinction is not relevant in this case because, as explained above, Graham is unable to meet even the less stringent "more likely than not" standard.

> Since the statements in the affidavits contradict the evidence received at trial, the jury would have had to decide important issues of credibility. But coming 10 years after petitioner's trial, this showing of innocence falls far short of that which would have to be made in order to trigger the sort of constitutional claim which we have assumed, *arguendo*, to exist.

Id. at 418-19.

The same is true here. Graham argues that JoAnn Graham's affidavit contains exculpatory information, but, in fact, the affidavit contains little more than JoAnn Graham's own conclusions. For example, she alleges that Graham did not commit an offense against DG, that after the taped conversation JoAnn "knew he had exonerated himself," and that the State presented irrelevant evidence. Moreover, JoAnn's allegations were known to Graham at the time of trial. For example, she asserts that DG allegedly confused fantasy with reality, that Graham was not alone with DG frequently enough to have opportunity to abuse DG, and that JoAnn was never called by the state as a witness. JoAnn also alleges in her affidavit that the prosecution threatened her and that she was issued a misdated subpoena, but these allegations shed no light on Graham's guilt or innocence. JoAnn Graham's identity was known to Graham at the time of trial and

there is nothing in her affidavit that could not have been discovered through the exercise of due diligence at the time of trial.

Belloir's identity was also known to Graham at the time of trial and, similarly, there is nothing in her affidavit that could not have been discovered earlier by Graham through due diligence.  Belloir's affidavit is also based almost entirely on her own legal conclusions and allegations that were already known at the time of trial.  The only aspect of Belloir's affidavit that is new and even remotely helpful to Graham's case is her statement that "I have also seen [DG] trying to separate [sic] her dad and his girlfriend by creating problems between them."  Aff. of Belloir at ¶ 9.  However, Belloir provides nothing to substantiate this allegation, and, in any event, DG's conduct with respect to her father, Randolph Gregory, and his girlfriend has no direct bearing on Graham's guilt or innocence.

Even if Graham could establish that the affidavits constitute new evidence, there was ample incriminating evidence produced at trial to support his conviction even in light of these affidavits.  Graham has failed to show that it is more

-17-

likely than not that no reasonable juror would have convicted him in the light of the affidavits. Therefore, Graham's claim of actual innocence does not justify setting aside the AEDPA limitation period.

### IV. CONCLUSION

For the reasons stated above, the Warden's motion for summary judgment (Doc. No. 8) is granted. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 30, 2007

cc: Montriville F. Graham, pro se
    Susan P. McGinnis, Esq.